**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

---

**MELLISA CORONADO,**

Plaintiff,

**v.**

Case No. 26-cv-2108

**U.S. BANK NATIONAL ASSOCIATION and**

**TIMOTHY COGGINS,**

Defendants.

---

# COMPLAINT AND DEMAND FOR JURY TRIAL

---

## I. INTRODUCTION

1. Plaintiff Mellisa Coronado ("Plaintiff"), by her undersigned attorneys, brings this action against Defendant U.S. Bank National Association ("U.S. Bank") for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and against Defendant Timothy Coggins ("Coggins"), individually, for intentional infliction of emotional distress and intentional interference with contract under Wisconsin common law.

2. Plaintiff sought to return to U.S. Bank in substantially the same position that she had previously performed. Coggins helped secure an offer, told Plaintiff that she owed him for hiring her, and then demanded that she expose her breasts for his sexual gratification. After Plaintiff accepted the offer and began the onboarding process, but

before obtaining clearance to begin the new job, Coggins invoked his assistance with the hiring process to press demands that had nothing to do with her qualifications or the bank's business.

3. Plaintiff resisted Coggins's demands and feared that refusing him would cost her the job. On May 26, 2026, she briefly exposed her breasts during a FaceTime call, but when Coggins began masturbating, she ended the call. Coggins complained that she hadn't given him enough time and sought further sexual interaction. Plaintiff refused. Three days later, U.S. Bank withdrew its offer.

4. U.S. Bank attributed its decision to Plaintiff's driving offense history, specifically two operating while intoxicated (OWI) misdemeanor offenses, in 2014 and 2022, respectively, although it had approved her for substantially the same work after reviewing the same background in September 2025. Coggins continued seeking sexual contact after the rescission. Plaintiff repeatedly reported his misconduct to U.S. Bank. However, Coggins continued attempting to contact her. Ultimately, Plaintiff sought law-enforcement assistance to stop his unwelcome communications.

## II. JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's Wisconsin common law claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in the Eastern District of Wisconsin pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because substantial events giving rise to this action occurred within this district.

7. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 443-2026-03492, alleging sex discrimination, sexual harassment, and retaliation.

8. The EEOC issued Plaintiff a Notice of Right to Sue dated August 26, 2026. Exhibit A is the Notice of Right to Sue.

## III. PARTIES

9. Plaintiff Mellisa Coronado is an adult female residing in Two Rivers, Manitowoc County, Wisconsin.

10. Defendant U.S. Bank National Association is a national banking association headquartered in Minneapolis, Minnesota, conducting substantial business operations throughout Wisconsin. At all relevant times, U.S. Bank was an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

11. Defendant Timothy Coggins is an adult male residing in Appleton, Outagamie County, Wisconsin. At all relevant times, he was employed by U.S. Bank as a Vice President and National Healthcare Director.

## IV. FACTUAL BACKGROUND

### A. Plaintiff's Prior Employment and Return to U.S. Bank

12. Plaintiff is an experienced banking professional with substantial experience in business development, merchant services, and relationship management.

13. In September 2025, U.S. Bank hired Plaintiff as a Business Banking Market Manager in Merchant Services, a Grade 14 position.

14. Before beginning that employment, Plaintiff underwent U.S. Bank's

background-screening process, which disclosed her previously existing driving offenses.

15. U.S. Bank nevertheless approved Plaintiff for employment, and Plaintiff performed duties involving business development, relationship management, and significant travel throughout her assigned territory.

16. Plaintiff subsequently resigned from U.S. Bank, effective March 6, 2026, to pursue another employment opportunity.

17. Later in March 2026, Plaintiff sought to return to U.S. Bank in substantially the same position, which was classified as a Grade 13 position.

18. Plaintiff was qualified for the position, having previously performed a substantially similar role for U.S. Bank.

**B. Coggins Secures the Offer and Tells Plaintiff She Owes Him**

19. Coggins participated in Plaintiff's recruitment and represented that he could determine whether U.S. Bank would rehire her.

20. On March 27, 2026, Coggins informed Plaintiff by text message that he was discussing her return to U.S. Bank under Pamela West, Head of Business Banking, and that, although West wanted to consider the matter, "it would ultimately still be my choice to make."

21. Coggins further informed Plaintiff, "I'm asking the recruiter to call you to at least get you back in the queue."

22. Coggins also communicated with other U.S. Bank personnel, including Commercial Banking Manager Shanna Graykowski and Nate Kuehl, concerning Plaintiff's candidacy.

23. Throughout the recruitment process, Coggins repeatedly questioned what Plaintiff would do differently if rehired, emphasized concerns attributed to other bank personnel, and told Plaintiff that she needed to prove herself against other candidates.

24. On or about April 7, 2026, after Plaintiff submitted a business plan supporting her return, Coggins questioned whether the plan was enough and asked, "What do I get? That's for Shanna—what do I get?"

25. On or about April 17, 2026, Plaintiff received a verbal employment offer. Coggins subsequently told Plaintiff, "You owe me. I hired you not once but twice. You better bring it."

26. On or about April 20, 2026, U.S. Bank extended Plaintiff a written offer to return as a Business Banking Market Manager (Merchant Services), a Grade 13 position, reporting to Pamela West, at an annual salary of approximately $101,000, with eligibility for incentive compensation and employment benefits. Pamela West is named as the "Hiring Manager" in the letter, which lists an anticipated start date of May 4, 2026.

27. Plaintiff accepted the offer and began the bank's preemployment screening and onboarding process. She had not yet begun working in the new position, and the offer remained subject to completion of the bank's preemployment requirements.

28. Coggins did not present himself as a bystander to that process. He communicated with the recruiter and bank leadership, claimed that the hiring decision was ultimately his to make, and told Plaintiff that she owed him for securing it.

### C. Coggins Demands Sexual Access During Recruitment and Onboarding

29. On or about April 27, 2026, Coggins arranged to meet Plaintiff in Appleton to provide her with a printer and monitor. During that meeting, he told Plaintiff, "You owe me."

30. Later that day, Coggins called Plaintiff and commented on her clothing and appearance. He asked whether she had been wearing a bra, stated, "I'm a guy, I know these things," and questioned what size her breasts were.

31. Coggins acknowledged the inappropriate nature of his comments, telling Plaintiff, "I probably shouldn't be saying this but you don't report to me so I can."

32. Plaintiff became uncomfortable and ended the call.

33. Coggins thereafter repeatedly demanded that Plaintiff expose her breasts to him, including telling her, "You owe me. Let me see them."

34. On or about May 1, 2026, Coggins again asked when he would "see them" and suggested communicating by FaceTime. Plaintiff did not answer his attempted FaceTime call.

35. Coggins continued requesting FaceTime interactions during Plaintiff's onboarding, including on May 4 and May 18, 2026.

36. Coggins's repeated demands were unwelcome. Plaintiff avoided calls, declined or postponed FaceTime calls, and ended communications that became sexual.

37. By telling Plaintiff that she owed him for hiring her and then demanding to see her breasts, Coggins treated his assistance as a personal debt that she was expected to repay with sexual access.

38. Coggins knew that Plaintiff was awaiting approval to begin working and

that the position represented a substantial financial and professional opportunity. He exploited her uncertainty about the job to pressure her to submit to his sexual demands.

39. Plaintiff feared that rejecting Coggins would jeopardize the offer. Her brief compliance with one demand occurred in that coercive setting; she did not welcome his conduct.

### D. Coggins Presses His Demands While Plaintiff Seeks Help With Delayed Approval

40. On or about April 22, 2026, U.S. Bank ordered a background investigation concerning Plaintiff's anticipated employment, which was completed on or about April 29, 2026.

41. The report disclosed operating while intoxicated offenses which substantially predated Plaintiff's prior employment with U.S. Bank.

42. As of April 29, 2026, the background report indicated that the overall score was "Decisional." This means that Plaintiff was not deemed automatically ineligible for the job based on her background check results. Rather, the employer has discretion "to determine the consumer's eligibility based on background check results."

43. Plaintiff's previous, August 15, 2025 background report likewise indicated that the overall score was "Decisional," giving U.S. Bank the discretion to offer her the job.

44. Plaintiff's anticipated start date was repeatedly postponed. In late April, she was told that a delay was necessary because Coggins would be on vacation. The bank subsequently postponed her start again while it claimed that it was reviewing her

background.

45. Plaintiff supplied requested information concerning her driving offense record and repeatedly sought updates from onboarding and compliance personnel.

46. Coggins remained involved in Plaintiff's onboarding. On May 4, 2026, he told Plaintiff that he had ordered her equipment. On May 6, 2026, he told her that bank personnel knew she was returning.

47. On May 19, 2026, following Coggins's unsuccessful attempts to persuade her to submit to his sexual demands the day prior, Plaintiff's background status changed from "Decisional" to "Ineligible."

48. On that day, U.S. Bank issued Plaintiff a pre-adverse action notice concerning her background screening.

49. On May 19, 2026, when Plaintiff asked whether anyone could contact compliance concerning her delayed approval, Coggins responded by text message, "I called yesterday and today."

50. During a call that day, Plaintiff was distraught about the pre-adverse action notice and attempted to discuss it with Coggins. Coggins instead continued asking to see her breasts.

51. In another conversation that day, Coggins told Plaintiff, "It's not your fault," "I've never seen anything like this," and "Here I go again helping you." He also expressed disappointment because he had expected to see her breasts.

52. Coggins thus knew that Plaintiff was distressed about whether the bank would permit her to begin working. When she sought help with that problem, he

continued demanding access to her body and reminding her that he was helping her. His statements tied the assistance she needed to the sexual gratification he expected.

53. Coggins likely provided adverse information to the background check company and influenced the change in Plaintiff's status from Decisional to Ineligible, either as punishment for not complying or to make Plaintiff more reliant upon his assistance and thus more likely to comply with his demands.

54. On or about May 22, 2026, U.S. Bank informed Plaintiff that her file remained under additional review and that her anticipated start date had been moved to June 1, 2026.

55. Plaintiff submitted nine letters of recommendation in support of her employment.

**E. The May 26 FaceTime Incident and Coggins's Further Demands**

56. On May 26, 2026, while Plaintiff was still awaiting final clearance to begin employment, Coggins again sought a FaceTime interaction to view her breasts.

57. During the FaceTime interaction, Plaintiff briefly exposed her breasts but ended the call in disgust when Coggins began masturbating.

58. Coggins repeatedly called Plaintiff back after she ended the call, but she did not answer these calls.

59. Later that afternoon, Plaintiff answered a call from Coggins because she believed he might have information concerning her pending employment.

60. Coggins complained, "That wasn't fair—you only gave me one minute."

61. During the same conversation, Coggins made an explicit sexual statement

concerning the size of his penis, telling her that he wanted to expose himself to Plaintiff and show her his "8 ½ inches."

62. Coggins's complaint that Plaintiff had given him only one minute reflected his insistence on further sexual access despite her decision to end the interaction. Plaintiff's brief exposure did not make his demands welcome or remove the pressure under which she responded.

### F. U.S. Bank Rescinds the Offer Three Days Later

63. On May 28 and May 29, 2026, Plaintiff contacted U.S. Bank personnel seeking information concerning her pending employment and submitted communications and supporting letters.

64. On May 29, 2026, approximately three days after the May 26 incident, U.S. Bank informed Plaintiff that it would not proceed with her employment.

65. On June 1, 2026, Plaintiff received an automated welcome email concerning her anticipated first day. After Plaintiff notified Coggins of the email and sought clarification, onboarding personnel informed her that the email was a mistake and that her offer had been rescinded.

66. Later that day, U.S. Bank also issued Plaintiff a formal notice rescinding her conditional offer of employment, citing her driving history and credit report.

67. U.S. Bank also asserted that Plaintiff's driving record disqualified her because the position required substantial driving.

68. Plaintiff's driving record and credit history had not materially changed since U.S. Bank approved her for employment in September 2025. Her prior position also

required significant driving, and the territory and essential business-development responsibilities were substantially unchanged. The bank had previously permitted her to perform substantially the same work with knowledge of the same driving and credit history.

69. During the period between completion of the background investigation and rescission of the offer, Coggins continued making sexual demands and communicating with bank personnel about Plaintiff's employment.

70. Coggins's stated authority over hiring, his actual involvement in recruitment and onboarding, his contacts with compliance, his repeated demands that Plaintiff repay his assistance with sexual favors, and the rescission three days after she ended the May 26 interaction suggest that Coggins participated in, influenced, or caused the decision not to hire Plaintiff because she resisted his sexual demands.

71. U.S. Bank's background check rationale was pretextual. Plaintiff's sex and resistance to Coggins's sexual demands motivated its refusal to hire her.

### G. Continued Harassment and Plaintiff's Injuries

72. Following U.S. Bank's withdrawal of the opportunity, Coggins continued contacting Plaintiff and seeking FaceTime interactions. Coggins represented to Plaintiff that despite the previous position falling through, he could nonetheless help her get another position.

73. On June 12, 2026, Plaintiff received two missed calls from Coggins within approximately one minute.

74. Plaintiff reported Coggins's misconduct to U.S. Bank multiple times. His

unwanted communications continued, causing further fear and distress. Because he would not stop calling her, Plaintiff sought help from law enforcement, which told Coggins to stop contacting her.

75. Plaintiff lost the opportunity to earn the offered annual salary of approximately $101,000, incentive compensation, and employment benefits. She subsequently obtained other employment at substantially lower compensation and has suffered, and continues to suffer, lost earnings and other economic and non-economic losses yet to be determined.

76. Coggins's conduct caused Plaintiff an extreme, disabling emotional response, including severe anxiety, fear, humiliation, emotional anguish, and psychological distress that has substantially interfered with her personal and professional functioning.

77. Plaintiff has experienced substantial disruption to her concentration, emotional stability, personal relationships, and ability to pursue professional opportunities.

78. Plaintiff has sought therapeutic treatment in connection with the emotional consequences of these events.

## V. CLAIMS FOR RELIEF

### COUNT I — QUID PRO QUO SEXUAL HARASSMENT
**Title VII, 42 U.S.C. § 2000e-2(a)(1)**
*Against U.S. Bank National Association*

79. Plaintiff adopts, realleges, and incorporates paragraphs 1 through 78.

80. Plaintiff was qualified for the position that U.S. Bank offered her.

81. Coggins, acting with actual or apparent authority over Plaintiff's prospective employment, subjected her to repeated unwelcome sexual advances and demands.

82. Coggins expressly and implicitly conditioned his employment-related assistance and Plaintiff's employment opportunity upon her willingness to provide sexual favors.

83. Plaintiff resisted Coggins's demands, avoided and ended sexual communications, and declined further sexual interaction after briefly exposing her breasts during the May 26 FaceTime call. Her brief compliance did not render the conduct welcome.

84. Coggins participated in or influenced the hiring process, and his discriminatory conduct affected U.S. Bank's decision not to hire Plaintiff.

85. Plaintiff's sex and resistance to Coggins's sexual demands were motivating factors in U.S. Bank's decision not to hire her, in violation of Title VII.

**COUNT II — RETALIATION**
**Title VII, 42 U.S.C. § 2000e-3(a)**
*Against U.S. Bank National Association*

86. Plaintiff adopts, realleges, and incorporates paragraphs 1 through 78.

87. Plaintiff opposed Coggins's unwelcome sexual demands and his efforts to condition her employment opportunity upon providing sexual favors.

88. Plaintiff's opposition included rejecting sexual demands, declining or avoiding sexual conversations, ending calls, and refusing to continue the sexual interaction Coggins sought.

89. Coggins knew of Plaintiff's opposition through her responses to his demands, including her termination of the May 26 FaceTime call and refusal to provide the further sexual interaction he requested.

90. Coggins possessed influence over the hiring process and communicated with bank personnel concerning Plaintiff's prospective employment.

91. U.S. Bank withdrew Plaintiff's employment opportunity shortly after she resisted Coggins's explicit sexual demands and ended the May 26 FaceTime call.

92. Plaintiff's opposition to unlawful sexual harassment was a but-for cause of U.S. Bank's refusal to hire her, constituting retaliation in violation of Title VII.

**COUNT III — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Wisconsin Common Law**
*Against Timothy Coggins, Individually*

93. Plaintiff adopts, realleges, and incorporates paragraphs 1 through 78.

94. Coggins deliberately used his involvement in Plaintiff's hiring to demand sexual access from her. He knew she was distressed about the threatened loss of the job and invoked his assistance while pressing those demands.

95. Coggins appeared to masturbate during a FaceTime call, complained that Plaintiff had exposed her breasts for only one minute, and sought to expose himself to her. He continued unwanted contact after the bank rescinded the offer and after Plaintiff reported his misconduct to U.S. Bank, requiring her to seek law enforcement assistance.

96. Coggins intended to cause Plaintiff emotional distress as a means of coercing her compliance with his sexual demands.

97. Coggins's conduct was extreme and outrageous, exceeding all reasonable

bounds of decency.

98. His conduct was a substantial factor in causing Plaintiff an extreme, disabling emotional response, including severe psychological distress and substantial impairment of her personal and professional functioning.

**COUNT IV — INTENTIONAL INTERFERENCE WITH CONTRACT**
**Wisconsin Common Law**
*Against Timothy Coggins, Individually*

99. Plaintiff adopts, realleges, and incorporates paragraphs 1 through 78.

100. Plaintiff accepted U.S. Bank's written employment offer, establishing a contractual relationship subject to the conditions stated in the offer. Alternatively, the written offer, her acceptance, the identified position, agreed compensation, and anticipated start date established a sufficiently concrete prospective contractual relationship with U.S. Bank.

101. Coggins knew of that relationship through his participation in securing the offer and in the onboarding process.

102. Coggins intentionally interfered with the relationship by using his influence over the hiring process to undermine Plaintiff's employment opportunity because she resisted his sexual demands.

103. Coggins acted for his own personal sexual interests rather than in good faith to advance any legitimate business interest of U.S. Bank, rendering his interference improper and without privilege or justification.

104. Coggins's interference was a substantial factor in U.S. Bank's decision not to proceed with Plaintiff's employment, causing her substantial economic damages.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1. Lost wages, incentive compensation, and benefits, including back pay and front pay as permitted by law;

2. Compensatory damages for emotional pain and suffering and other recoverable injuries, including economic losses caused by Coggins's intentional interference with Plaintiff's contractual or prospective contractual relationship;

3. Punitive damages;

4. Reasonable attorney fees and costs under Title VII;

5. Prejudgment and post-judgment interest; and

6. Any other relief the Court deems just and appropriate.

## VII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**O'CONNOR LAW FIRM**
*Counsel for Plaintiff Mellisa Coronado*

*s/ Patrick M. O'Connor* (11/13/26)
Patrick M. O'Connor, Esq.
WI SBN 1094992
PO Box 930133
Verona, WI 53593
(608) 203-6349
pat@wilaborlaw.com

**LORI PETERSON LAW FIRM**
*Counsel for Plaintiff Mellisa Coronado*

*s/ Lori Peterson* (11/13/26)
Lori Peterson, Esq.
MN LLN 0212490
(E.D. Wis. Admission Pending)
IDS Center
80 S. 8th St., #900
Minneapolis, MN 55402
(612) 321-0606
loripeterson@loripetersonlawfirm.com